IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 14-216 |
| | ) | |
| ERIC CHARLES SMITH | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Eric Smith illegally manufactured and possessed dangerous explosives which he used to illegally create an even more dangerous destructive device capable of causing indiscriminate mass destruction. For these reasons, as well as for the reasons provided below, the government recommends a sentence within the advisory guideline range, **63-78 months** imprisonment, set forth in the Presentence Report.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a Defendant's Guidelines sentence precisely as they would have before Booker.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing United States v. King, 454 F.3d 187, 194, 196 (3d Cir.2006); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006)). See also United States v. Smalley, 2008 WL 540253, *2 (3d Cir. Feb. 29, 2008) (stating that the Gunter directive is consistent with later Supreme Court decisions). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision. United States v. Grier, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. United States v. Langford, 2008 WL 466158, *8-11 (3d Cir. Feb. 22, 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice

if at sentencing either the Defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Cooper, 437 F.3d at 329. See also Rita v. United States, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); United States v. Schweitzer, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a within-guideline sentence in this case.

## I. BACKGROUND

On August 4, 2015, the Defendant Eric Smith pled guilty to Count 1 of the Indictment charging him with Illegally Possessing an Unregistered Destructive Device in violation of Title 26, United States Code, Section 5861(d). The parties entered into a plea agreement which stipulates that the offense charged in Count 2 of the Indictment, which is Illegally Manufacturing and Dealing in Explosives, will be dismissed at sentencing, although the Defendant acknowledges his responsibility for the conduct underlying that count and it may be used at his sentencing against him. During the plea colloquy, the government established that following Mr. Smith's

arrest for violently assaulting his live-in girlfriend and their five-year old child, he was found to be in possession of explosive precursor chemicals, recipes for explosives, bomb making literature, remote detonating devices, and various white supremacist and Nazi paraphernalia. In addition, Smith was found to be in possession of approximately 20 fused devices, including one that was a six-inch long fused cylinder device which contained a perchlorate powder explosive along with nails and other fragmentation within it. Another fused device within the Defendant's residence contained the words, "Fuck the government – down with Obama Nigger Muslim Pig…" The Defendant is a convicted felon that is not permitted to possess firearms, particularly destructive devices in this case that were not properly registered in the National Firearms Registration and Transfer Record.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The maximum sentence that may be imposed on the Defendant is imprisonment of up to the ten years, a fine of $250,000, and a term of supervised release of no more than 3 years.

### B. Sentencing Guidelines Calculation

The Presentence Report accurately reflects the Defendant's advisory guideline level is 19. Mr. Smith has a criminal history category of VI, the highest possible category. Thus, the sentencing

guidelines recommend a sentence of imprisonment of 63-78 months imprisonment.

In the Defendant's Position With Respect to Sentencing Factors, filed on November 9, 2015, the Defendant stated that his final offense level should actually be a 17, resulting in an advisory guideline range of 51-63 months imprisonment. See ECF Doc. 31. Although he cites no authority to support this position, the Defendant states that the "two level enhancement [under USSG §2K2.1(b)(3)(B)] is improperly assessed and is double counting. On one hand, it increases the offense level by 6 because it is a destructive device and on the other, increases it by another 2 levels because it is not a destructive device." Id. at 2.

The United States Probation Office responded on November 18, 2015 with an addendum to the Presentence Report accurately stating that USSG §2K2.1(b)(3)(B) is accurately applied in this case as it applies specifically to destructive devices[1], as opposed to the other types of "firearms" which are set forth in Title 26, U.S.C. §5845(a), which, along with destructive devices, provide the basis for the base

[1] It should be noted that §2K2.1(b)(3) differentiates between "destructive devices" that are "portable rockets, missiles, or devices for use in launching portable rockets or missiles," which receive a 15 guideline level enhancement, and other destructive devices, which received a 2 level enhancement, which is applicable here.

offense level set forth in §2K2.1(a)(4)(B)[2] As stated clearly by Application Note 7 of §2K2.1,

> A defendant whose offense involves a destructive device receives both the base offense level from the subsection applicable to a firearm listed in 26 U.S.C. §5845(a) (e.g. subsection…(a)(4)(B)…) and the applicable enhancement under subsection (b)(3). Such devices pose a considerably greater risk to the public welfare than other National Firearms Act weapons.

As such, the Defendant's argument set forth in his Position with Respect to Sentencing Factors sets forth an incorrect application of the U.S. Sentencing Guidelines. Therefore, this Court should find that the applicable advisory Guideline range set forth by U.S. Probation (i.e. 63-78 month imprisonment; Offense level 19, criminal history category VI) is accurate.

## III. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one within the advisory guideline range set forth in the Presentencing Report.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007). As will be discussed later, the

[2] The base offense level of 20 is merited due to the Defendant's possession of an NFA firearm (defined in 26 U.S.C. §5845(a)) and the fact that the Defendant was a convicted felon (i.e. a prohibited person).

Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the Defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the Defendant; (4) the need to provide the Defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[3]

A. Consideration of the 3553(a) Factors.

[3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

3553(a)(1)-Nature and Circumstances of the Offense; History and Characteristics of the Defendant

The Defendant in this case was manufacturing dangerous explosives without any license or pursuant to any regulation. In addition, the Defendant's intent in manufacturing explosives was for malicious purposes in that he used his explosives to, in turn, manufacture destructive devices capable of maiming and killing indiscriminately. The Defendant's possession of the device with anti-government and racist sentiment indicates a malicious purpose for the devices themselves. In short, the nature and circumstances of this offense reflect the need for a lengthy term of imprisonment.

In addition to the above, the history and characteristics of the Defendant, as set forth in the Presentence Report, indicate an individual who has been convicted on twenty-three prior occasions, dating back to 1999. In fact, the Defendant comes before this court with a criminal history category of VI, the highest a Defendant can have under the U.S. Sentencing Guidelines, despite the fact that thirteen of his twenty-three convictions carry no criminal history points.

3553(a)(2)(A)- Reflect Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment for the Offense

The Defendant was essentially an unregulated bombmaker. In addition, the evidence indicates that his bombmaking activities were

intended for malicious purposes. As such, the Court's sentence in this case should reflect the dangerous nature of the offense committed by the Defendant.

3553(a)(2)(B)&(C) - To afford adequate deterrence to criminal conduct & To protect the Public from further crimes of the Defendant

As stated above, this offense represents the twenty-fourth time that this Defendant has appeared before a Court and been sentenced for a crime. The sentence in this case should serve to deter the Defendant from further crimes against the public while ensuring that the Defendant is confined so that he is not a threat to the public during the term of his imprisonment.

B. The Continued Importance of the Sentencing Guidelines

The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," Kimbrough v. United States, 128 S. Ct. 558, 574 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional

staff with appropriate expertise,'" id. at 574 (quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court recently stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough, 128 S. Ct. at 574 (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).

In Rita, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable. While this presumption does not apply before the district court, Rita, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." Id. at 2463 (emphasis in original).

Further, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of

1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual Defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary*." Booker, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. Id. at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" *Cooper*, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 128 S. Ct. at 596 n.6. See also United States v. Langford, 2008 WL 466158, *4-7 (3d Cir. Feb. 22, 2008) (explaining at length the continued importance of the guidelines).

The Supreme Court's decisions in Gall and Kimbrough do not change this analysis. As is evident from the quotations above, these cases reaffirmed the importance of consideration of the guidelines by district courts, along with all other 3553(a) considerations. Gall was actually focused on the scope of appellate review: the Supreme Court held that appellate courts must review sentences deferentially, under an abuse of discretion standard, whether such sentences are within or outside the advisory ranges. While this ruling may result in more frequent affirmance of district court decisions, it does not relieve the district courts of their primary responsibility, as explained in the Supreme Court decisions, to properly assess and consider all sentencing factors, including the advisory guideline range, and to give careful consideration to that range.

Thus, the Gall Court instructed:

> It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. Gall, 128 S. Ct. at 594.[4]

[4] The Court added: "If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported

Likewise, the Court's decision in Kimbrough, issued on the same day as Gall, emphasized the district courts' responsibility to consider the Sentencing Guidelines as a bulwark against disparate sentencing. In Kimbrough, the Court held that the guidelines for crack cocaine offenses are advisory, and that a sentencing court in such a case may consider, among other factors, the criticism stated by the Sentencing Commission and others of those particular guidelines. Responding to an assertion that such case-by-case assessment of the propriety of the guidelines may lead to significant disparity in sentencing, the Court emphasized the district courts' responsibility to avoid that result:

> Section 3553(a)(6) directs *district courts* to consider the need to avoid unwarranted disparities — along with other § 3553(a) factors — when imposing sentences. See *Gall, ante . . . .* Kimbrough, 128 S. Ct. at 574 (emphasis in original). Needless to say, fidelity to the guidelines is the only available means of carrying out this mandate.

---

by a more significant justification than a minor one." Id. at 597.

Further, Kimbrough did not encourage wholesale abandonment of guideline sentencing. To the contrary, Kimbrough narrowly focused on sentencing for crack cocaine offenses. With respect to those offenses alone, the Court suggested that the guidelines are not entitled to the ordinary respect given to the Sentencing Guidelines on the basis of the care and study put into them, given that the Sentencing Commission itself has condemned its own guidelines in this area. Regarding any other offenses, the Supreme Court suggested that rejection of the suggested guidelines based only on an individual judge's disagreement with the formulation of the guidelines may not fare well on appeal, stating: "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect §3553(a) considerations' even in a mine-run case." Id. at 575 (quoting Rita, 127 S. Ct. at 2465). These statements reflect the fact that, ordinarily, the Sentencing Guidelines reflect the distillation of national sentencing experience and provide a useful measure for determining appropriate and consistent punishments.

For all of these reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to

deferential appellate review for reasonableness. However, a district court must consider the guideline range, see § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders. See § 3553(a)(6). Moreover, there are no 3553(a) factors in this particular case which militate against imposition of a sentence within that range; to the contrary, the 3553(a) factors on balance support the imposition of the recommended guideline punishment. Accordingly, the government respectfully recommends a sentence of **63-78** months imprisonment, within the range set forth by the Presentence Report.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney

By: s/James T. Kitchen
James T. Kitchen
Assistant U.S. Attorney
PA ID No. 308565
U.S. Attorney's Office
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
Office: 412-644-3500
Jimmy.Kitchen@usdoj.gov